IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONSTRUCTION WORKERS PENSION )
TRUST FUND, et al.,                                )
                                                              )
          Plaintiffs,                            )
                                                              )
          v.                                            )    No. 13 C 2111
                                                              )
NAVISTAR INTERNATIONAL          )
CORPORATION, et al.,                       )
                                                              )
          Defendants.                          )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on various motions for appointment as lead Plaintiff brought pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (Section 78u-4(a)(3)(B)), as amended by the Private Securities Litigation Reform Act of 1995 (PSLRA). For the reasons stated below, the court appoints Central States, Southeast and Southwest Areas Pension Fund (Central States) as lead Plaintiff, and its chosen counsel as lead counsel.

## BACKGROUND

Beginning in November 2010, Defendant Navistar Corporation (Navistar), Defendant Daniel C. Ustian, Navistar's Chief Executive Officer, and Defendant

1

Andrew J. Cederoth, Navistar's Chief Financial Officer and Executive Vice President, allegedly made materially false and misleading statements concerning Navistar's financial condition and future business prospects. Specifically, Defendants allegedly made false representations concerning Navistar's compliance with U.S. Environmental Protection Agency (EPA) regulations. The EPA allegedly imposed new regulations on 2010 model trucks, which included strict emissions standards. Two primary engine technologies emerged to meet the new standards: Exhaust Gas Recirculation (EGR), which reduced emissions by burning off exhaust pollutants within the engine, and Selective Catalytic Reduction (SCR), which reduced emissions by treating the engine exhaust with a urea-based chemical after it left the engine. Navistar allegedly chose the EGR technology, even though its competitors were using the SCR technology. Plaintiffs contend that despite the $700 million Navistar spent on developing its proprietary Advanced EGR engine, by November 2010, Navistar had not even applied for certification of the EPA emissions standard. Due to Navistar's alleged missteps concerning emissions compliance, Navistar allegedly faced technological, legal, and liquidity issues, which threatened its business. Plaintiffs claim that in order to conceal this fact from Navistar's investors and customers, Navistar repeatedly represented that it had an EPA-compliant EGR engine ready to be certified. Plaintiffs contend that as a result of Defendants' alleged false statements, the price of Navistar common stock traded at artificially inflated prices, reaching a high of $70.17 per share on April 26, 2011.

Eventually, Navistar was allegedly forced to make certain public disclosures

that allegedly made evident the falsity of Navistar's prior statements. On June 7, 2010, Navistar allegedly reported a loss of $172 million for the second quarter of 2012 (June 2010 Disclosure). On July 6, 2012, Navistar allegedly admitted its failure to achieve an EPA-compliant EGR engine and announced that in order to remain in business it was adopting the same SCR technology its competitors had been using (July 2012 Disclosure). Finally on August 2, 2012, Navistar allegedly issued a press release announcing that it was withdrawing its full-year fiscal 2012 guidance until the release of its third fiscal quarter 2012 results in September, and announcing that it had received a formal letter of inquiry from the U.S. Securities and Exchange Commission (August 2012 Disclosure). Plaintiffs contend that as a result of the above-mentioned disclosures, the price of Navistar's common stock dropped from a closing price of $24.77 per share on August 1, 2012 to $21.44 per share on August 2, 2012, a decline of approximately 13% in one trading day on a volume of nearly 7.6 million shares.

Plaintiffs consist of purchasers of Navistar's common stock between November 3, 2010, and August 1, 2012, who claim to have suffered losses as a result of Defendants' alleged artificial inflation of the price of Navistar common stock. Plaintiffs brought claims against Defendants under the PSLRA in the instant action, and in case numbers 13 C 2639 and 13 C 2691, to recover for the alleged "fraud-on-the market" by Defendants. On May 23, 2013, case numbers 13 C 2639 and 13 C 2691 were consolidated with the instant action.

The following groups of Plaintiffs in this case have filed motions seeking

3

appointment as lead Plaintiff: (1) Central States, (2) the Arkansas Teacher Retirement System and Sheet Metal Workers' National Pension Fund (collectively referred to as "Retirement Funds"), (3) the Jacksonville Police and Fire Pension Fund (Jacksonville Fund), (4) the Fulton County Employees Retirement System (Fulton Retirement Fund), (5) Harold M. DeNardi (DeNardi), and (6) Jane C. Purnell (Purnell). After consolidation of the three related cases, the court gave all groups still interested in pursuing appointment as lead Plaintiff an opportunity to file briefs relating to their request for appointment. On June 6, 2013, Fulton Retirement Fund and Purnell withdrew their motion. On June 13, 2013, Jacksonville Fund withdrew its motion. DeNardi did not file any further brief seeking appointment after consolidation. Therefore, the remaining motions for appointment as lead Plaintiff are Central States' motion and Retirement Funds' motion.

## DISCUSSION

The appointment of a lead plaintiff in a securities fraud class action is governed by Section 78u-4(a)(3)(B)), which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," and if cases are consolidated, after consolidation, "the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions. . . ." *Id.* Section 78u-4(a)(3)(B) also provides in part the following:

(iii) Rebuttable presumption

> (I) In general
>
> Subject to subclause (II), for purposes of clause (I), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> (II) Rebuttal evidence
>
> The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff–
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.*


I.  Procedural Requirements of the PSLRA

Fulton Retirement Fund contends that Central States failed to satisfy the procedural requirements of the PSLRA to be chosen as lead Plaintiff.  (DE 46 3). Pursuant to 15 U.S.C. § 78u-4(a)(3)(A) (Section 78u-4(a)(3)(A)), "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.*  On March 19, 2013, the Plaintiff in the first filed action relating to Navistar's alleged misconduct, Construction Workers Pension Trust Fund, published a notice of that

action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(I). Sixty days after that date was May 18, 2013, which was a Saturday, and thus, the deadline became May 20, 2013.

On May 20, 2013, Central States and other groups of Plaintiffs moved for appointment as lead Plaintiff. Central States contends that its sworn certification, which was part of its May 20, 2013 filing, was electronically corrupted and therefore had to be re-filed on May 21, 2013. Central States asserts that upon discovering the technical failure on the morning of May 21, 2013, counsel for Central States reported the technical failure to the ECF Help Desk at the Clerk's Office, who told counsel to re-file the corrupted exhibit, which counsel promptly did. Central States has shown that it followed the prescribed rules on technical failures during electronic filings. Fulton Retirement Fund contends that the refiling of the certification on the morning of May 21, 2013, was untimely. The court finds that Central States met the deadline set forth under Section 78u-4(a)(3)(A). The undisputed record clearly shows that Central States did make the required filing on May 20, 2013, and that it was due to a technical difficulty that part of the electronic file was not readable. It is not disputed that Central States promptly addressed the issue on the following morning when Clerk's Office staff were able to assist. Therefore, Central States satisfied the requirements of the PSLRA in seeking appointment as lead Plaintiff.

II. Largest Financial Interest.

Central States and Retirement Funds both contend that they have the largest financial interest in this case. As indicated above, there is a "presumption that the

most adequate plaintiff in any private action . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class; and . . . otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B).

Both sides agree that the loss calculation should at least in part include a calculation under the "last-in-first-out" methodology (LIFO). (DE 48 5 n,5); (DE 51 9). Both sides also agree that the LIFO loss for Retirement Funds is approximately somewhere between $5 million and $5.4 million. (DE 48 5); (DE 51 9). Retirement Funds calculates Central States' LIFO loss as approximately $2 million, and Central States calculates its LIFO loss at approximately $5.9 million. (DE 51 9). Retirement Funds contends that Central States' figure is too high because certain claimed losses by Central States involved sales prior to the June 2012 Disclosure. In a "fraud-on-the-market" case, a plaintiff will need to establish "but for the circumstances that the fraud concealed, the investment . . . would not have lost its value." *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *11-12 (N.D. Ill. 2012)(internal quotations omitted)(quoting *Global Markets, Inc.,* 482 F.3d 991, 995 (7th Cir. 2007)). While Central States will need to show causation in regard to its losses, it is premature at this juncture to determine that Central States or any Plaintiff will be unable to recover for losses prior to June 7, 2012. Such losses relating to sales at a time when prices were allegedly being artificially manipulated by Defendants may be recoverable. Central States is not required at this juncture to establish causation for all losses and Retirement Funds cites no controlling precedent that specifically

7

includes such a requirement. The court also notes that in its initial filings in this case, Retirement Funds itself initially included pre-June 7, 2012 loss amounts in its loss calculations. (DE 24-3 Exhibit C). It was only after Retirement Funds discovered that it did not have the largest loss amount when compared to other Plaintiffs that Retirement changed its position in later filings as to the proper loss calculation, seeking to exclude pre-June 7, 2012 losses. (DE 48 5). The record reflects that Central States has the largest potential LIFO losses. Central States also points out that, unlike Retirement Funds, Central States had 54,400 net shares purchased, and that its net expenditures during the Class Period equal approximately $7 million, as compared to Retirement Funds' expenditures of approximately $5.4 million.

Finally, as explained below, even if the court were to disregard pre-June 7, 2012 losses, the net shares purchased, and total expenditures, and find that Retirement Funds has the greatest financial interest in this case, Central States has rebutted the presumption that Retirement Funds would be the proper lead Plaintiff because of Retirement Funds' limited connections to significant legal issues facing the other Plaintiffs in this case. Central States has shown that even if it is deemed to be the group with the second greatest financial interest, it would still be the most appropriate lead Plaintiff in this case among all potential candidates.

III. Requirements of Rule 23.

Central States contends that it can satisfy the requirements of Federal Rule of

Civil Procedure 23 (Rule 23). As indicated above, a lead plaintiff must also make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u4(a)(3)(B)(iii)(I)(cc). Central States satisfies the typicality requirement because it has shown that, like other Plaintiffs, it bought shares from Navistar during the class period, paid prices allegedly inflated because of the allegedly false and misleading statements made by Defendants, and suffered damages as a result of the alleged fraud. Under Rule 23(a)(4), the lead plaintiff must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this case, there is no evidence of any conflict of interest between Central States and the purported class members. Central States has shown that it has a substantial interest in the outcome of this case, and that it is represented by competent, experienced counsel that is able to properly advocate for the proposed class in this case. Therefore, for the purposes of selecting a lead plaintiff, Central States satisfies the adequacy and typicality requirements of Rule 23.

IV. Central States' Proposed Lead Counsel

Under the PSLRA, the lead plaintiff has the right to select and retain counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). Generally, the lead Plaintiff's choice is deemed reasonable, absent extraordinary circumstances. *See Craig v. Sears Roebuck & Co.*, 253 F.Supp.2d 1046, 1050 (N.D. Ill 2003). Central States has shown that its selection of the firm of Cohen Milstein Sellers & Toll PLLC, as lead counsel is appropriate, based on the record provided, which

documents the firm's significant experience and record of success in securities class actions.

V.  Retirement Funds' Inadequate Representation

The Court notes that even if the Retirement Funds possessed the largest financial interest in litigation, Central States has rebutted the presumption that Retirement Funds is the proper lead Plaintiff.  In all three complaints from the cases consolidated in this case, Plaintiffs have premised their damages on three disclosures allegedly made by Defendants: (1) the June 2010 Disclosure, (2) the July 2012 Disclosure, and (3) the August 2012 Disclosure.  It is also apparent from the allegations that the June 2010 Disclosure, which disclosed certain financial losses, was the most innocuous of the three disclosures, and that Plaintiffs mainly rely on the July 2010 Disclosure and the August 2012 Disclosure, when Defendant began to make clear the inaccuracy of prior statements.

Central States points out that all of Retirement Funds' damages are premised solely on the damages caused by the June 2010 Disclosure.  It is undisputed that after the June 2010 Disclosure, and before the July 2012 Disclosure, Retirement Funds sold all of its Navistar stock.  Thus, Retirement Funds has no interest in devoting resources to pursuing claims based upon the July 2012 Disclosure or the August 2012 Disclosure.  Retirement Funds' primary interest will be to show that the June 2010 Disclosure was the main culprit in the corrective price drop in the market.  Plaintiffs other than Retirement Funds will not have any great need to prove that the

10

June 2010 Disclosure impacted the market and led to damages, and can focus on the more glaring admissions alleged in the later disclosures. Retirement Funds has no incentive to fairly and adequately protect the interests of the class as to later disclosures. Central States has shown that it is alleging significant losses resulting from all three relevant disclosures in this case and that it has a great incentive to vigorously litigate all material issues in this case.

     Retirement Fund will also face a unique defense unlike most other Plaintiffs, which makes it an inadequate lead Plaintiff. For example, Retirement Funds may face a motion to dismiss based on a lack of standing since Retirement Funds admittedly suffered no injury relating to the July 2012 Disclosure and the August 2012 Disclosure. Finally, due to the fact that Retirement Funds was admittedly not impacted by the later disclosures at issue in this case, Retirement Funds would be unable to satisfy the Rule 23 requirements necessary for a lead Plaintiff. Therefore, even if Retirement Funds showed itself to have the largest financial interest in this case, it would not be an appropriate lead Plaintiff.

## CONCLUSION

Based on the foregoing analysis, the court appoints Central States as the lead Plaintiff and Cohen Milstein Sellers & Toll PLLC as lead counsel.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 30, 2013