UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSTRUCTION WORKERS PENSION FUND – LAKE COUNTY AND VICINITY, Individually and on Behalf of All Others Similarly Situated, </br></br> Plaintiff, </br></br> v. </br></br> NAVISTAR INTERNATIONAL CORPORATION, et al., </br></br> Defendants. | No. 13 C 2111 </br></br> Judge Sara L. Ellis |

**OPINION AND ORDER**

Lead Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States") brings this case on behalf of itself and a putative class of similarly situated persons or entities who purchased securities in Navistar International Corporation ("Navistar"). Central States alleges that Navistar and sixteen current and former officers and directors—Daniel C. Ustian, Andrew J. Cederoth, Eugenio Clariond, John D. Correnti, Diane H. Gulyas, Michael N. Hammes, David D. Harrison, James H. Keyes, Steven J. Klinger, William H. Osborne, Dennis D. Williams, Stanley A. McChrystal, John P. Waldron, Richard C. Tarapchak, Jack Allen, and Eric Tech—made false or misleading representations with regard to Navistar's business operations that caused Navistar's stock price to be artificially inflated. Specifically, Central States alleges that Defendants misrepresented and concealed material information regarding the viability of Navistar's engine design and development efforts to meet certain Environmental Protection Agency ("EPA") standards. In doing so, Central States contends that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b)

and t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Now before the Court are Defendants' motions to dismiss the Consolidated Amended Complaint [99, 101, 103][1] and Central States' motion to strike certain statements and exhibits attached to one of the motions to dismiss [108]. Because Central States fails to specify which of Defendants' statements were false or misleading and fails to specifically connect each alleged misstatement with a contrary allegation of fact, the motions to dismiss are granted and the Consolidated Amended Complaint is dismissed without prejudice. Central States' motion to strike is denied as moot.

## BACKGROUND[2]

Navistar produces commercial and military trucks, buses, diesel engines, recreational vehicles, and chassis, and provides parts and service for trucks and trailers. Its North American truck and engine market is a core segment of its business. Navistar's stock is listed on the New York Stock Exchange. Central States seeks to represent a class of individuals who purchased or otherwise acquired Navistar stock between June 9, 2009 and August 1, 2012 (the "Class Period"). The last day on which Central States purchased Navistar stock during the Class Period

---

[1] The motions to dismiss were filed by three groups of Defendants: (1) Navistar, Ustian, Cederoth, Allen, and Tech [99]; (2) Clariond, Correnti, Gulyas, Hammes, Harrison, Keyes, Klinger, Osborne, Williams, McChrystal, and Tarapchak [101]; and (3) Waldron [103]. The latter two motions incorporate the arguments the Court finds relevant to resolving the pending motions that are made in the first and thus all three motions will be treated jointly here.

[2] The facts in the background section are taken from the Consolidated Amended Complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997). Navistar, Ustian, Cederoth, Allen, and Tech attached various documents to their motion to dismiss, some of which Central States moved to strike. As the Court's resolution of the motions to dismiss does not require consideration of the documents and statements challenged in the motion to strike, that motion is denied as moot.

is October 27, 2011. The Individual Defendants served as directors and/or officers of Navistar during the Class Period.

Navistar's truck and engine business is subject to various EPA regulations. In 2001, pursuant to the Clean Air Act, the EPA issued a rule that required a 95% reduction in nitrogen oxide ("NOx") emissions from heavy-duty diesel engines. Specifically, new engines were to emit NOx at a rate of no more than 0.2 g/bhp-hr ("0.2 NOx") by 2010. To obtain EPA certification, a manufacturer had to demonstrate compliance with the 0.2 NOx standard. Alternatively, certification could be obtained through a combination of a 0.5 NOx engine and banked emissions credits. For a period of time, the EPA also allowed manufacturers to pay nonconformance penalties ("NCPs") while they finished developing their emissions control technology.

In response to the new EPA standard, the heavy-duty truck industry—except for Navistar—pursued selective catalytic reduction ("SCR") technology, which uses an after-treatment device to reduce emissions.[3] These manufacturers met the 0.2 NOx standard on time. Navistar decided to pursue a different technology—exhaust gas recirculation ("EGR"), an in-cylinder solution that does not require after-treatment. Because EGR technology was still being developed, Navistar's initial strategy to comply with EPA's regulation involved certification through the use of banked emissions credits.

Investors and analysts were particularly focused on Navistar's public updates on the development of EGR technology and progress toward obtaining 0.2 NOx certification. Navistar publicly made statements that it had developed "viable, 'proven' EGR technology and investors should not be concerned about whether Navistar would be able to certify EGR engines at 0.2 NOx because it already had produced 0.2 NOx engines that were being tested." Consol. Am.

---

[3] Navistar uses SCR engines in its diesel engines for the European market.

Compl. ¶ 9. For example, Ustian, Navistar's then-CEO and one of its directors, stated in November 2010 that Navistar was "100% there in terms of [its] ability to" achieve 0.2 NOx with EGR technology. *Id.* ¶ 10. Ustian was also quoted as saying that Navistar had products "that are running today at 0.2 [NOx]."[4] *Id.* ¶ 115. Similar statements were made in press releases, conference calls, trade articles, and at various conferences. Navistar's SEC forms also discussed its strategy of focusing on EGR technology. Additionally, in March 2011, Ustian represented that Navistar had submitted its 13-liter EGR engine to the EPA for certification at 0.2 NOx, but the EPA stated in later court filings that it did not receive an application for such certification until January or February 2012. Navistar did announce that it submitted another application for its 13-liter EGR engine to the EPA for certification at 0.2 NOx on January 31, 2012.

Navistar did not achieve the 0.2 NOx emissions requirements through EGR technology and never was certified as meeting that requirement independent of banked emissions credits. From the start, Navistar's engineers had encountered various technical problems with EGR technology and continually noted that additional time was needed before a compliant engine would be ready. These issues were brought to the attention of senior-level management, including Ustian, Tech, and Cederoth. For example, CW5, the Chief Engineer of Navistar's Engine Group, in an August 27, 2010 presentation (the "Go Fast presentation"), indicated that EGR technology meeting the 0.2 NOx standard would not go into production until at least Q1 2014 for a 13-liter engine, Q3 2014 for an 11-liter engine, and Q1 2015 for a 15-liter engine. This schedule would leave Navistar with at least a 1.75 year gap between when its emissions credits would be exhausted and when the 13-liter engine would be compliant. And despite

---

[4] Central States relies on various confidential witnesses in its Consolidated Amended Complaint. CW1 acknowledged that Navistar's engines may have achieved 0.2 NOx in tests performed in "dyno cells," the environment in which Defendants claim that EPA test certification takes place. But CW4 reported that Navistar's testing was not accurate because results of testing in a "dyno cell" are not reproducible in the real world.

Navistar's engineers' suggestions that an alternative to EGR should be pursued, development of an SCR backup plan was halted.  Additionally, Navistar incurred excessive warranty costs in connection with its newly-developed 2010 and 2011 engines, which had valve and soot problems.  These warranty costs were larger than the amount for which Navistar had reserved.

On February 14, 2012, Navistar's share price declined after an internet article reported that the EPA would fine Navistar for shipping back-dated engines during its 2010 engine transition.  Then, in February 28, 2012 letters to counsel for Daimler Trucks, Mack Trucks, and Volvo, the EPA indicated its initial concerns that Navistar would be able to certify its engine at 0.2 NOx and that even if it could be certified, Navistar would not be able to introduce it until June 15, 2012.  On March 8, 2012, Navistar announced a $153 million loss for the first quarter of 2012.  On April 19, 2012, Wells Fargo downgraded Navistar to "Market Perform" based on challenges Navistar faced, including obtaining EPA emissions certification for its engines.

On June 7, 2012, before the markets opened, Navistar reported a $172 million loss for its second fiscal quarter ending April 30, 2012, due in part to increased warranty expenses for repairs to 2010 and 2011 vehicles.  This caused Navistar's stock price to drop by $4.04 per share (14.35%) that day.  Then, on July 6, 2012, Navistar announced that it was abandoning EGR technology in favor of the SCR strategy the rest of the heavy-duty truck industry had already adopted.  Navistar's stock price dropped by $4.37 per share (15.18%) that day.  Finally, on August 2, 2012, Navistar issued a press release announcing that it was withdrawing its full year fiscal 2012 guidance until releasing its third quarter 2012 results in September.  Navistar also disclosed an SEC formal letter of inquiry into accounting and disclosure matters dating back to

November 2010.[5]  Navistar's stock price fell $3.33 per share (13.44%) that day.  On August 30, 2012, Navistar disclosed that Ustian had resigned from Navistar effective August 26, 2012.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case."  *AnchorBank*, 649 F.3d at 615 (citation omitted).  Rule 9(b) applies to "all averments of fraud, not claims of fraud."  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements."  *Id.*

---

[5] Navistar received this letter on June 21, 2012, yet did not disclose its receipt until August 2, 2012.  Navistar also received a subpoena from the SEC on July 16, 2012, which again was not disclosed until August 2, 2012.

On top of the pleading burden imposed by Rules 8 and 9(b), Congress further heightened the pleading standards on securities fraud claims when it enacted the Private Securities Litigation Reform Act ("PSLRA"). Congress created this standard to check pleading abuses in private securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (*Tellabs II*), 551 U.S. 308, 313–14, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). In order to properly allege that the defendant misrepresented or omitted material facts, the PSLRA requires the plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In pleading scienter, the PSLRA requires that the plaintiff, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). For an inference to be "strong," it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs II*, 551 U.S. at 324.

## ANALYSIS

Defendants, in three separate motions to dismiss the Consolidated Amended Complaint, raise a number of arguments, including that (1) the Consolidated Amended Complaint is an improper puzzle pleading, (2) Central States cannot challenge statements made after its last Navistar stock purchase, (3) the PSLRA safe harbor protects forward-looking statements, (4) any remaining allegedly false statements were not false or misleading when made, (5) Central States has not properly alleged scienter or loss causation, and (6) Central States does not allege facts to support that any of the Individual Defendants were control persons so as to form the basis of the Section 20(a) claim. The Court focuses on the first argument, that Central States has failed to

7

satisfy the PSLRA's heightened pleading standards by not specifically identifying which of Navistar's statements during the Class Period were false nor explaining exactly why each specific statement is false. Although the Court recognizes that, in doing so, it only invites Central States to clarify its allegations and Defendants to re-raise the arguments not addressed by any such amendment, the Court finds such a step necessary in order to streamline the case and ensure that the Court addresses the substantive issues raised by Defendants only with respect to the specific alleged false and misleading statements or omissions that Central States intends to pursue in this litigation.

The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and all facts that form the plaintiff's basis for believing that the statement is misleading. 15 U.S.C. § 78u-4(b)(1). Courts around the country have made clear that a complaint does not satisfy the PSLRA's pleading standards when it quotes the defendant at length and then uses a stock assertion that the statement is false or misleading for reasons stated in an earlier paragraph. For example, in *Boca Raton Firefighters & Police Pension Fund v. Bahash*, the Second Circuit dismissed a complaint for failing to satisfy the PSLRA because it "consist[ed] in large part of large block quotations with italicized text, followed by a passage that reads '[t]he statements referenced in [the preceding paragraphs] were each materially false and misleading when made for the reasons set forth in ¶ 256 and the factual detail contained throughout this Complaint." 506 F. App'x 32, 37–38 (2d Cir. 2012) (second and third alterations in original). Likewise, in *Conlee v. WMS Industries, Inc.*, a court in this district dismissed the complaint wherein "the heart of the complaint, the section titled 'Defendants' False and Misleading Statements Made During the Class Period,' is a sixteen page mash-up of block quotes, snippets, parentheticals, and Lead

8

Plaintiff's characterizations of alleged statements made by one or more Defendants." No. 11 C 3503, 2012 WL 3042498, at *4 (N.D. Ill. July 25, 2012).

Several courts have described this pleading style as "puzzle pleading," because it requires the Court and the defendants to piece together exactly which statements the plaintiff is challenging and which allegations contradict those statements. *Id.* In the context of the PSLRA, this practice "improperly place[s] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts." *Id.* (alteration in original) (quoting *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009)); *see also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998) ("[C]ourts have repeatedly lamented plaintiffs' counsels' tendency to place the burden [ ] on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims." (second alteration in original) (internal quotation marks omitted) (citation omitted)). As in *Conlee*,

> [t]he net effect of the pleading's format is to leave the reader—whether Defendants or the court—jumping from page to page in an attempt to link the alleged statements to the background that supposedly makes them false or misleading. Even this activity might be tolerable if the statements themselves were clearly identified, but as noted above, they are not. Rather, it is frequently difficult to discern where the supposedly challenged statements end and the context or characterization begins.

*Conlee*, 2012 WL 3042498, at *4. The imprecise nature of such a pleading not only makes the Court's job more difficult, but it also leads to increased discovery costs, as the parties are likely to incur costs examining irrelevant issues. *Id*. at *4–5 ("A vague and ill-formed complaint can lead to more expansive (and expensive) document production and unnecessarily lengthy depositions covering needless factual ground.").

The PSLRA requires plaintiffs not only to identify specific false or misleading statements, but also to explicitly connect those statements to factual allegations demonstrating

9

that they are false. *See Bashash*, 506 F. App'x at 38 (holding that the complaint did not sufficiently connect the allegedly false statements with contrary allegations: "Needless to say, asking the Court to assess the truth of facts in light of 'the factual detail contained throughout this Complaint,' does not comport with our exhortation that plaintiffs 'must demonstrate with specificity why and how' each statement is materially false or misleading." (citation omitted)). Directly contrary to the practice of puzzle pleading, the PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Thus, a plaintiff may not "le[ave] it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000).

Here, Central States' 101-page, 241-paragraph Consolidated Amended Complaint is an inappropriate "puzzle pleading." To start, Central States alleges that statements were false only after quoting Navistar representatives at length. Many of the Consolidated Amended Complaint's paragraphs include block quotes, with liberal use of bold and italics, leaving Defendants and the Court to speculate which statements or parts of statements Central States alleges are inaccurate. Indeed, the disconnect between the statements the parties consider to be at issue is evident from their briefs, which often focus on different parts of the same statements. *Compare* Doc. 100 at 21, *with* Doc. 112 at 24; *see Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013) (noting that "in their papers, Defendants did not evidence a clear understanding of the statements that Plaintiffs challenge"). Central States even appears to

concede that it is not challenging certain statements that appear throughout the Consolidated Amended Complaint. *See* Doc. 112 at 28 ("Plaintiff does not allege that Defendants misrepresented the risk that the Company's EGR technology would not be approved by the EPA. Nor does Plaintiff allege that the Company misrepresented the risk that Navistar's emissions credits would be exhausted." (citations omitted)). And the use of bold and italics to emphasize certain statements does nothing to clarify Plaintiffs' assertions of false statements. *See Lauria v. Biosante Pharm., Inc.*, 968 F. Supp. 2d 951, 958 (N.D. Ill. 2013) ("The italized [*sic*]/bolded words in this paragraph are cryptic. . . . Perhaps the plaintiffs intended to italicize and bold the entire sentences, or merely used italics and bolding for emphasis."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) ("The fact that certain sections of the report have been highlighted is not a reliable guide to determining which statements are alleged to be false, as bolded statements sometimes do not turn out to be actionable, while non-bolded statements sometimes are actionable."). Thus, the Court is left without a clear understanding of which statements are relevant if it were to address Defendants' substantive arguments.

Further, after quoting transcripts, press releases, SEC filings, and trade magazines at length, Central States merely sets out, as the plaintiffs in *Bashash* and *Conlee* did, that these statements were false and misleading for a laundry list of reasons in addition to "others" found throughout the remainder of the Consolidated Amended Complaint. *See, e.g.*, Consol. Am. Compl. ¶ 123 ("Defendants' statements in paragraphs 112-122 above . . . were false and misleading when made, and/or omitted material facts, for the following reasons, among others . . . ."); *id.* ¶ 140 ("Defendants' statements in paragraphs 125-138 above . . . were false and misleading when made, and/or omitted material facts, for the following reasons, among others

. . . ."); *id.* ¶ 160 ("Defendants' statements in paragraphs 142-158 above . . . were false and misleading when made, and/or omitted material facts, for the following reasons, among others . . . ."). These reasons are not linked to any specific statement but rather are alleged to be generally applicable to all allegedly misleading statements and omissions. This is not sufficient. *See In re Autodesk*, 132 F. Supp. 2d at 841 ("It is not clear, however, which portion of ¶ 46(d) and (e) is meant to explain why the statement quoted from ¶ 45 is false or misleading."); *see also Primo*, 940 F. Supp. 2d at 1112–13 (dismissing complaint as improper puzzle pleading, noting that "Plaintiffs make some attempt to connect the alleged omissions to particular statements but continue to do so in a general manner that requires the reader to guess what particular statements they mean or how those statements were rendered false or misleading.").

Thus, the Court finds that Central States has not satisfied the applicable pleading standards because the Consolidated Amended Complaint does not identify with specificity which statements Central States alleges are false, nor does it set out why Central States believes each individual statement is false. The Court affords Central States another opportunity to amend the Consolidated Amended Complaint in order to comply with all applicable pleading standards. *See Conlee*, 2012 WL 3042498 at *5; *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1280 (E.D. Wash. 2007) (where a complaint involves improper puzzle pleading, plaintiff should be allowed to streamline and reorganize complaint). Although the Court expresses no opinion at this time on the merits of Defendants' remaining arguments, it cautions Central States to be cognizant of these arguments in amending the complaint so as to allow this litigation to move forward as expeditiously as possible.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss [99, 101, 103] are granted and Central States' motion to strike [108] is denied as moot. The Consolidated Amended Complaint [66] is dismissed without prejudice. Plaintiffs are given until August 22, 2014 to file a Second Consolidated Amended Complaint in conformity with this Opinion and Order.

Dated: July 22, 2014

_____
SARA L. ELLIS
United States District Judge