UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSTRUCTION WORKERS PENSION TRUST FUND – LAKE COUNTY AND VICINITY, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>NAVISTAR INTERNATIONAL CORPORATION, DANIEL C. USTIAN, ANDREW J. CEDEROTH, and JACK ALLEN,<br><br>      Defendants. | Civ. No. 1:13-cv-2111<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND REIMBURSEMENT OF LEAD PLAINTIFF'S COSTS AND EXPENSES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

I. INTRODUCTION .............................................................................................................. 1

II. HISTORY AND BACKGROUND OF THE CASE ........................................................... 3

III. ARGUMENT ....................................................................................................................... 4

    A. Lead Counsel Is Entitled to Attorneys' Fees From the Common Fund ................... 4

    B. The Court Should Award a Reasonable Percentage of the Common Fund ............ 5

    C. The *Synthroid* Factors Confirm the Requested 22% Fee Is Fair and Reasonable ................................................................................................................ 5

    D. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ........ 12

    E. Lead Counsel's Expenses Are Reasonable and Should Be Approved .................. 12

    F. Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) ................................................................................ 13

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams v. Van Kampen Funds, Inc.*,
   No. 01 C 7538, 2006 WL 163023 (N.D. Ill. Jan. 18, 2006) ..................... 7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ..................... 4

*Beesley v. Int'l Paper Co.*,
   No. 3:06-CV-703-DRH- CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ..................... 4, 11, 12

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..................... 5, 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................... 4

*Eisenstadt v. Centel Corp.*,
   113 F.3d 738 (7th Cir. 1997) ..................... 11

*Florin v. Nationsbank of Georgia, N.A.*,
   34 F.3d 560 (7th Cir. 1994) ..................... 4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..................... 11

*Greater Pennsylvania v. Whitehall*,
   No. 04-cv-01107 (N.D. Ill. order dated July 24, 2006) ..................... 8

*In re Harnischfeger Indus., Inc.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ..................... 4, 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..................... 11

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ..................... 4

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..................... 7

*Meyenburg v. Exxon Mobil Corp.*,
   No. 3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) ..................... 7

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..................... 6

*Norfolk v. Ustian*,
   No. 07-cv-07014 (N.D. Ill. order dated May 25, 2011) ...................................................... 8

*Plumbers and Pipefitters Local Union No. 630 v. Allscripts*,
   No. 09-cv-04726 (N.D. Ill. order dated July 12, 2012) ...................................................... 8

*In re Potash Antitrust Litig.*,
   No. 1:08-CV-6910 (N.D. Ill. order dated June 12, 2013) .................................................. 8

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................................ 11

*Silverman v. Motorola, Inc.*,
   No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ........................................... 13

*Standard Iron Works v. ArcelorMittal*,
   No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ......................................... 11

*Stumpf v. Pyod, LLC*,
   12 C 4688, 2013 WL 5753829 (N.D. Ill. Oct. 23, 2013) .................................................. 5

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ..................................................................................... 5, 6, 10

*The Takara Trust v. Molex Inc.*,
   No. 05-cv-01245 (N.D. Ill. order dated Mar. 1, 2007) ...................................................... 8

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ..................................................................................... 5, 6, 10

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
   No. 02-CV-1109-DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................ 4

*Will v. Gen. Dynamics Corp.*,
   No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .................................... 12

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) ........................................................................................... 12

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ........................................................................................... 11

*Wong v. Accretive Health, Inc.*,
   No. 1:12-cv-03102 (N.D. Ill. order dated Apr. 30, 2014) ................................................. 8

**STATUTES**

15 U.S.C. § 78u-4 ................................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h) ..............................................................................................................1

*Full-Year Review*, NERA Economic Consulting, Jan. 25, 2016,
    http://www.nera.com/content/dam/nera/publications/2016/2015_ ............................................6

Court-appointed Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Lead Counsel"), respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of 22% of the Settlement Fund, or $2,002,000 (with interest on such amount at the same rate as earned by the Settlement Fund). Lead Counsel also seeks reimbursement of $150,764.40 in litigation expenses reasonably and necessarily incurred to prosecute and resolve the Action and $8,715.50 in Lead Plaintiff's reasonable costs and expenses pursuant to 15 U.S.C. § 78u-4(a)(4). Notably, the foregoing amounts are *less* than the amounts stated in the Notice to Class Members, which, as of the date of this filing, has not drawn any objections.[1]

## I. INTRODUCTION

After litigating this Action for more than three years, Lead Counsel achieved a recovery of $9,100,000 in cash for the benefit of the Class. The Settlement is an excellent result for the Class, considering the substantial risks and obstacles that would be faced if the Action were to continue. Lead Counsel's effort in achieving this Settlement has been without compensation of any kind, and its fee and reimbursement of expenses has been wholly contingent on the result achieved. The requested fee is reasonable given the result obtained, and is consistent with, if not below, the fees awarded in similar actions in the Seventh Circuit and throughout the country. The requested fee has also been approved by Lead Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Lead Plaintiff" or "Central States"), a sophisticated institutional investor.

---

[1] The Court is respectfully referred to the accompanying Declaration of Carol V. Gilden in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Gilden Decl."), for a detailed description of the case and the proposed Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated May 4, 2016 (Dkt. 161) (the "Settlement" or "Stipulation").

1

*See* Declaration of James P. Condon, Deputy Chief Legal Officer for Central States, Southeast and Southwest Areas Pension Fund in Support of (A) Lead Plaintiff's Motion for Final Approval of Settlement; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Condon Decl."), attached as Ex. 1 to the Gilden Decl.

As described below, this Action settled only after Lead Counsel conducted an intense fact investigation, overcame multiple legal and factual challenges, and participated in a fulsome mediation process and substantial confirmatory discovery. Moreover, the requested fee amount was disclosed in the Court-approved Notice that was mailed to approximately 141,826 potential Class members, informing them that Lead Counsel would apply for fees not to exceed 22% of the recovery, plus reimbursement of out-of-pocket expenses not to exceed $175,000. *See* Declaration of Alexander Villanova Regarding (A) Mailing of Notice and Proof of Claim Form and (B) Report on Requests for Exclusion Received ("Villanova Decl."), ¶ 11; *see also* Dkt. No. 163 (Order Preliminarily Approving the Settlement, Notice to the Class and Scheduling Final Approval Hearing ("Preliminary Approval Order")) and Dkt. No. 161-2 (Exhibit A-1 to Stipulation of Settlement (the Notice)). In return, Epiq has received a total of 15,940 Proof of Claim Forms from potential Class Members. Villanova Decl., ¶ 11. The Notice also informed the Class that Lead Plaintiff would seek reimbursement of costs and expenses, as set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA") PSLRA at 15 U.S.C. § 78u-4(a)(4), of not more than $10,000. The Notice was mailed to potential Class Members on June 9, 2016, and on a rolling basis thereafter, and published in the *Investor's Business Daily* and on *PR Newswire* on June 20, 2016. Villanova Decl., ¶ 12. As of the date of this filing, no objections to the Settlement, or to Lead Counsel's and Lead

Plaintiff's reimbursement of fees and costs as described in the Notice, have been received. Gilden Decl., ¶ 38.[2]

The Settlement—which provides for payment of $9,100,000 in cash, plus interest earned thereon—is a very good result for the Class. The Settlement followed intensive arm's-length settlement negotiations and is the product of over three years of hard-fought litigation, including a comprehensive, highly-intensive fact investigation that Lead Counsel continued to conduct for approximately a year and half through the filing of Lead Plaintiff's Second Consolidated Amended Complaint (Dkt. No. 128), as well as substantial confirmatory discovery in support of the Settlement. Gilden Decl., ¶ 44. Lead Plaintiff and Lead Counsel believe that the Settlement is a very positive result for Class Members considering the risks of continued litigation, and the risks to Lead Plaintiff's ability to prove elements of its claim including falsity, scienter, loss causation, and damages, as well as substantial obstacles to challenging the dismissal of several of Lead Plaintiff's misstatements, as well as all but one Defendant, by the Court's July 10, 2015 order (Dkt. No. 146) (the "Motion to Dismiss Order"). *Id.*, ¶ 30. These risks are more fully described in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, filed contemporaneously.

## II.   HISTORY AND BACKGROUND OF THE CASE

In order to avoid undue repetition, the Court is respectfully referred to the Gilden Declaration for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation conducted, the substantial motion practice and

---

[2] As set forth in the Notice, the deadline for Class Members to object or to submit requests for exclusion is October 7, 2016. To date, there have been no objections. Gilden Decl., ¶ 36. If any objections to the Settlement are received, Lead Counsel will respond accordingly.

confirmatory discovery undertaken, and the settlement negotiations, as well as the numerous risks and uncertainties presented in this litigation. Gilden Decl., ¶¶ 11-25.

## III. ARGUMENT

### A. Lead Counsel Is Entitled to Attorneys' Fees from the Common Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Indeed, "the Supreme Court has made clear that private actions are an effective means of enforcing federal laws against securities fraud" and "under the PSLRA, plaintiffs' counsel are entitled to 'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.'" *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002). *See also Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund."); *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH- CJP, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing *Boeing*, 444 U.S. at 478).

Lawyers who bring securities class actions serve a particularly important public function and should thus be encouraged to pursue meritorious cases by collecting reasonable fees. As the Supreme Court has emphasized, private securities actions provide a "'most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (noting that the Court has "long recognized that meritorious private actions

to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

### B. The Court Should Award a Reasonable Percentage of the Common Fund

"There are two ways to calculate the attorneys' fees that may be awarded to a prevailing party": (1) the common fund doctrine, pursuant to which "a reasonable fee is based on a percentage of the fund bestowed on the class"; and (2) the lodestar method, which "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Stumpf v. Pyod, LLC*, 12 C 4688, 2013 WL 5753829, at *2 (N.D. Ill. Oct. 23, 2013) (emphasis in original). Though courts may use either method in awarding fees to counsel, "[t]he Seventh Circuit recognizes that there are advantages to utilizing the percentage of fund method in common fund cases including its relative objectivity and the fact that it is easily administered." *Great Neck Capital*, 212 F.R.D. at 411. Indeed, "courts increasingly use the percentage of fund approach after consideration of specified guidelines under the particular circumstances involved." *Id*. See also *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class").

### C. The *Synthroid* Factors Confirm the Requested 22% Fee Is Fair and Reasonable

The Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In applying this standard, the Seventh Circuit, for instance in *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005), considered, among other things, the following factors:

(1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." 415 F.3d at 600. *See also Synthroid*, 264 F.3d at 721 (reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). These factors strongly support the fee requested here.

1.  **The Requested Fees Are Reasonable When Compared to Awards in Other Class Action Cases in This Circuit**

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

At 22%, the fee request here is well within the range of percentage fees awarded, and indeed significantly below many awards, within the Seventh Circuit. Moreover, the request for 22% is in line with, if not below, the range of fee awards among all Circuits. Between 2011 and 2015, courts have awarded a median percentage of 30% of the settlement fund for all securities class action settlements between $5 and $10 million. *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, NERA Economic Consulting, Jan. 25, 2016 at 36, http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf (defining various categories of ranges, including the $5-$10 million range, along with median fee awards for each category). At least one court in this

District has found that "25% is the median fee award in cases involving recoveries of $5-15 million"—again a standard award above Lead Counsel's fee request in this Action. *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, at *7 (N.D. Ill. Jan. 18, 2006); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000) (recognizing "the established 30% benchmark for an award of fees in class actions"); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation"); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third [percent] (33 1/3%) in a class action i[s] not uncommon.").

By way of example, and in line with the national statistics described above as well as standard fees awarded by courts in the Northern District of Illinois, below are examples of fees awarded in recent class actions within the Seventh Circuit where the settlement amount was comparable to the Settlement Amount here[3]:

| Case/Fee Order | Percentage of Fund | Settlement Amount |
|---|---|---|
| *Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102 (N.D. Ill. order dated Apr. 30, 2014) | 30% | $14 million |
| *In re Potash Antitrust Litig.*, No. 1:08-CV-6910 (N.D. Ill. order dated June 12, 2013) | 33 1/3% | $10 million |
| *Plumbers and Pipefitters Local Union No. 630 v. Allscripts*, No. 09-cv-04726 (N.D. Ill. order dated July 12, 2012) | 25% | $10.15 million |
| *Norfolk v. Ustian*, No. 07-cv-07014 (N.D. Ill. order dated May 25, 2011) | 30% | $13 million |

---

[3] *See, e.g.*, *Abrams*, 2006 WL 163023, at *6 (noting the importance of assessing "the size of the recoveries upon which [award] percentages were applied" when reviewing representative awards as part of awarding a reasonable fee).

| Case/Fee Order | Percentage of Fund | Settlement Amount |
|---|---|---|
| *The Takara Trust v. Molex Inc.*, No. 05-cv-01245 (N.D. Ill. order dated Mar. 1, 2007) | 30% | $10.5 million |
| *Greater Pennsylvania v. Whitehall*, No. 04-cv-01107 (N.D. Ill. order dated July 24, 2006) | 30% | $7.5 million |

### 2. The Quality of the Legal Services Rendered by Lead Counsel Further Supports the Award of a 22% Fee

Lead Counsel specializes in complex securities litigation with a successful track record in cases throughout the country. *See* Gilden Decl., ¶ 28, and Lead Counsel's firm resume attached thereto as Ex. 5. Lead Counsel respectfully submits that the quality of Lead Counsel's efforts in the Action to date, together with its substantial experience in securities class actions and its commitment to the litigation, provided Lead Counsel with the capability to negotiate the $9,100,000 Settlement.

Moreover, Lead Counsel expended substantial effort to advance the Class' claims, and made strategic decisions based on Lead Counsel's years of experience litigating securities class actions. The Settling Parties reached the Settlement only after vigorous litigation, by which time Lead Plaintiff and Lead Counsel had developed a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action. The $9,100,000 Settlement was achieved after Lead Counsel: (1) conducted an extensive investigation of all potential claims that could be asserted against Navistar and its executives and others, including extensive legal research; (2) analyzed numerous documents filed by Navistar with the SEC as well as transcripts of quarterly investor calls and various other public documents; (3) conducted substantial research, both directly and in conjunction with an outside investigator retained by Lead Counsel, to identify over 50 potential witnesses likely to have information relevant to the Class' claims; (4) conducted interviews with more than 30 percipient fact witnesses in various states within the

8

U.S., and including in-person interviews that required travel; (5) filed two amended complaints based on the results of its ongoing investigation; (6) opposed Defendants' various motions to dismiss through the submission of extensive briefing, resulting in the Court's Motion to Dismiss Order that sustained, in part, Lead Plaintiff's claims against Defendant Daniel C. Ustian; (7) retained and consulted with an accounting expert on accounting issues, as well as a damages expert to obtain assistance in understanding issues related to loss causation, materiality, and damages; (8) participated in a fulsome mediation process conducted by Mr. Melnick,[4] that included presentation of the Settling Parties' respective positions and loss causation and damages analyses based on complex economic regression models, and which process was preceded by the exchange of detailed written mediation briefs and other information on damages by the Settling Parties; (9) engaged in negotiations with counsel for Navistar on the scope, search terms, custodians and confidentiality restrictions on documents to be produced by Navistar as part of confirmatory discovery, which negotiations required Mr. Melnick's active assistance; before agreeing to proceed with the Settlement; (10) conducted broad confirmatory discovery by reviewing and analyzing, vis-à-vis Lead Plaintiff's allegations, Defendants' substantial production of documents on a rolling basis from December 2015 to January 2016; (11) designed, in consultation with a damages expert, a Plan of Allocation based on the criteria set forth in PSLRA and an analysis of economic data particular to Navistar securities; and (12) negotiated and drafted appropriate documentation of the Settlement, including the Stipulation and the Notices to be issued to potential Class Members. Gilden Decl., ¶ 4. Thus, the Settlement is the culmination of substantial fact investigation, vigorous motion practice, a thorough mediation process with a well-regarded private mediator, and extensive confirmatory discovery.

---

[4] *See* http://www.jamsadr.com/melnick/ (biography of Jed D. Melnick, Esq.).

### 3. The Attorneys' Fees Requested Are Fair and Reasonable in Light of the Risks Assumed by Lead Counsel.

As the *Synthroid* court noted, the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Taubenfeld*, 415 F.3d at 600 (court should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"). Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. Unlike counsel who do not pursue cases on a contingent fee basis and thus receive regular payment even if their client's case is not successful, Lead Counsel have not been compensated for any of the 3,465.25 hours spent by attorneys and additional litigation staff resulting in $2,046,672.50 in fees, nor the $150,764.40 in reasonable out-of-pocket expenses since this Action began. While the outcome here was successful, recovery at the outset of the case was far from assured. Indeed, Lead Counsel assumed a significant risk that Defendants would succeed in their attempts to have the SAC dismissed, or later defeat class certification, or prevail at summary judgment or trial, in which case the Class and Lead Counsel would recover nothing.

Lead Counsel took on the above-listed out-of-pocket costs and the expenditure of substantial attorney and litigation staff time even though the risk of no recovery at all in this Action was a distinct possibility. Despite the numerous false and misleading statements alleged by Lead Plaintiff, the Court nonetheless held in its Motion to Dismiss Order that only two alleged false and misleading statements were potentially actionable and that the rest—as a matter of law—were not actionable. The Court thus significantly limited the Class' claims in its Motion to Dismiss Order. Indeed, Defendants were likely to advance additional arguments to the Court to persuade it to dismiss Ustian's two surviving misstatements. In addition, Defendants disputed

both loss causation and damages and argued that Lead Plaintiff could prove no damages. At trial, these disputes "would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014).

The risk of no recovery in complex cases of this type is real. In many class actions, class counsel expend thousands of hours and, yet, receive no remuneration despite their diligence and expertise. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (vacating judgment totaling $2.46 billion and ordering new trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (vacating jury verdict of $81 million for plaintiffs on appeal); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming summary judgment for defendants); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law for defendants).

### 4. The Reaction of the Class To-Date Also Supports Lead Counsel's Requested Fee

As of the date of this filing, 141,826 Notices have been sent to potential Class Members informing them of Lead Counsel's intention to request up to a 22% fee in the Action and no Class Member has objected. Villanova Decl., ¶ 11. The lack of "any meaningful number of objections" is "an unmistakable sign of the Class's overwhelming support for Lead Counsel's Application." *Beesley*, 2014 WL 375432, at *1 (noting the presence of one objection to the request for fees and reimbursement of costs; *see also Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572 at *2 ("The reaction of the Class supports the requested fee award" because "[t]he absence of objections indicates that the fee is fair and reasonable and consistent with prevailing market rates"). Because no Class Member has to date objected to Lead Counsel's request, the reaction of the Class also supports approval of a 22% fee.

### D. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

A lodestar cross-check compares counsel's request for fees to the actual hours and resultant fees spent on a case. However, a district court is under no obligation to cross-check the requested fees against the lodestar. *See Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology."). Nevertheless, Lead Counsel's requested fee is supported by a lodestar cross-check here because it results in a negative multiplier of 0.98, and is thus *less* than the actual lodestar incurred in pursuing the case. Gilden Decl., ¶ 10. *See, e.g., Will v. Gen. Dynamics Corp.,* No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (finding that the requested fee "easily withst[ood] such analysis" because it resulted in a multiplier that was less than one).

### E. Lead Counsel's Expenses Are Reasonable and Should Be Approved

Lead Counsel requests reimbursement of litigation expenses reasonably incurred on behalf of the Class that are properly recovered by counsel. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley,* WL 375432, at *3. Lead Counsel's litigation expenses, as detailed in the Gilden Declaration, total $150,764.40.[5] The expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. The Notice informed potential Class Members that Lead Counsel would apply for reimbursement of expenses in an amount not to exceed $175,000. *See* Dkt. No. 161-2

---

[5] Separately, pursuant to Lead Counsel's retention agreement with Lead Plaintiff, the Expense Schedule omits $14,698.33 in standard administrative costs, including computerized research, telephone and facsimile charges, and photocopying charges.

12

(Exhibit A-1 to Stipulation of Settlement (the Notice)). To date, there has been no objection and reimbursement should be approved. Gilden Decl., ¶ 69.

### F. Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Lead Plaintiff expended substantial time and effort in representing the best interests of the Class and actively supervising the prosecution of the Action. Lead Plaintiff closely monitored Lead Counsel's pursuit of the Class' claims in the case and also reviewed filings, followed developments in the litigation, conferred regularly with Lead Counsel regarding case strategy and developments, attended the mediation, consulted with Lead Counsel on the ongoing settlement negotiations, and evaluated the Settlement. The Notice informed Class Members that Lead Plaintiff would seek a reimbursement award of up to $10,000, and no Class member has objected as of this filing. Accordingly, Lead Plaintiff respectfully requests a reimbursement award of $8,715.50 in connection with its participation in and supervision of the Action. *See, e.g.*, *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *5 (N.D. Ill. May 7, 2012).

### CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable and adequate and finally certify the Class for purposes of the Settlement.

Dated: September 23, 2016

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

/s/ Carol V. Gilden
Carol V. Gilden
190 South LaSalle St., Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com
Illinois Bar No. 06185530

Steven J. Toll
S. Douglas Bunch
Genevieve O. Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Lead Counsel for the Court-Appointed Lead Plaintiff and the Class*